1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

2:08-CV-1448 JCM (RJJ)

WELLS FARGO BANK, N.A.,

          Plaintiff,

v.

LaSALLE BANK NATIONAL
ASSOCIATION,

          Defendant.

**ORDER**

Presently before the court is defendant LaSalle Bank National Association's consolidated motion *in limine*. (Doc. #182). Plaintiff Wells Fargo Bank, N.A. filed an opposition. (Doc. #187). Defendant then filed a reply. (#192).

**Legal Standard**

Pursuant to Federal Rule of Evidence 402, only relevant evidence is admissible at trial. Evidence is relevant if "it has any tendency to make a fact more probable or less probable than it would be without the evidence." FED. R. EVID. 401; *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005). Courts in the Ninth Circuit routinely grant motions *in limine* seeking to exclude evidence that is irrelevant to the claims and defenses at issue. *See, e.g.*, *M2 Software*, 421 F.3d at 1087-88.

Federal Rule of Evidence 403 provides that evidence, although relevant, may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or needlessly presenting cumulative

**James C. Mahan**
**U.S. District Judge**

1    evidence." FED. R. EVID. 403.  This is a balancing test left to the sound discretion of the trial court.

2    *See, e.g.*, *Maddox v. City of L.A.*, 792 F.2d 1408, 1417-18 (9th Cir. 1986).

3    **A.**    **Documents and testimony concerning the overall performance of the program or**

4    **securitization**

5          Defendant first moves to limit evidence of the overall performance of the MFG program or

6    the MF2 securitization.  Defendant argues that the overall performance, which pertains to nearly 500

7    loans not in issue, is immaterial to the instant breach of representations and warranties claims for the

8    14 Palm Terrace loans.  According to defendant, conflating the overall performance with the specific

9    loans at issue "create[s] the significant potential for juror confusion and unfair prejudice."  (Doc.

10    #182).

11          In response, plaintiff argues that the overall performance is important because it demonstrates

12    certain "systemic flaws" in defendant's origination practices.  These flaws allegedly impacted all of

13    defendant's loans and are, therefore, relevant to the loans at issue.  For this particular motion *in*

14    *limine*, plaintiff asserts that it should be allowed to introduce evidence, produced internally by

15    defendant, showing that the quality of defendant's origination practices suffered following

16    defendant's conversion of MFG from a "portfolio" to a "for sale" program.

17          Pursuant to Rule 401, evidence is relevant if "it is has any tendency to make a fact more or

18    less probable than it would be without the evidence."  Here, systemic flaws in the defendant's

19    origination practices would tend to make plaintiff's allegations more probable than they would be

20    without the evidence.  The court further finds that the probative value of this relevant evidence is not

21    substantially outweighed by unfair prejudice, confusing the issues, or misleading the jury.  FED. R.

22    EVID. 403.  Thus, the evidence is relevant and admissible pursuant to Rules 401 and 402.

23    Accordingly, the monthly delinquency reports for the MF2/MF3 securitizations and Mr. Gambara's

24    delinquent loan analysis are admissible.

25    **B.**    **Trepp report**

26          Defendant moves to exclude a report purporting to analyze delinquency rates of defendant's

27    loans in comparison to other commercial loans.  Defendant's motion is based on three grounds: (1)

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

evidence of the overall performance would mislead the jury, confuse issues, and create unfair prejudice, (2) pursuant to Federal Rule of Evidence 802, it is hearsay for which no exception exists, and (3) pursuant to Federal Rule of Evidence 403, it is inherently unreliable and misleading and is likely to cause jury confusion and unfairly prejudice defendant.

The court excludes the Trepp report pursuant to Federal Rule of Evidence 403; the probative value of the report is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.  As the Oklahoma court held on a related motion *in limine*, "this evidence has great potential to mislead the jury to decide liability based on the alleged poor performance of the security" rather than whether defendant breached its warranty as to the 14 Palm Terrace loans.  (Ex. 1, Okla. memorandum opinion and order, p. 2-3).

**C.    Documents and testimony concerning Bank of America's evaluation and subsequent actions**

Next, defendant moves to exclude evidence of Bank of America's evaluation of the MFG program, arguing that these analyses are irrelevant to whether defendant breached any representations and warranties with respect to the 14 Palm Terrace loans.  Plaintiff agrees not to introduce evidence of Bank of America's discontinuance of the MFG program, but argues that Bank of America's evaluation of the program is admissible to prove systemic origination flaws.

Again, the court finds this evidence admissible pursuant to Federal Rule of Evidence 401.  Evidence demonstrating systemic flaws in the origination process tends to make plaintiff's allegations more probable.  FED. R. EVID. 401.  The court further finds that the probative value of this relevant evidence is not substantially outweighed by unfair prejudice, confusing the issues, or misleading the jury.  FED. R. EVID. 403.  Accordingly, evidence of Bank of America's evaluation of the program is admissible pursuant to Rules 401 and 402.

**D.    Internal audits and reviews**

Defendant moves to exclude internal audits and reviews of the MFG program in general.  Defendant asserts that there is no evidence that these internal audits and reviews specifically addressed the Palm Terrace loans.  Therefore, this evidence is not pertinent to the claims at issue

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  here.

2        The court agrees with the Oklahoma court's ruling on this issue: "the relevance, if any, of this

3  review on whether [d]efendant breached warranties regarding the . . . underlying loans is

4  substantially outweighed by the confusion of the issues and unfair prejudice caused to [d]efendant."

5  (Ex. 1, Okla. memorandum opinion and order, p. 4).  The court excludes this evidence pursuant to

6  Federal Rule of Evidence 403.

7  **E.**      **Office of the Comptroller of the Currency ("OCC") audit**

8        Defendant's next motion *in limine* seeks to exclude evidence referring to or relating to any

9  OCC audit.  Defendant asserts that any such evidence is irrelevant because the audit did not involve

10  the MFG program at issue here.

11        The audit admittedly does not encompass the program at issue here.  Therefore, the court

12  finds that this evidence is not relevant pursuant to Federal Rule of Evidence 401.  Further, its

13  probative value is substantially outweighed by the confusion of the issues and the prejudice it would

14  cause against defendant.  FED. R. EVID. 403.

15  **F.**      **Broker-ordered appraisals**

16        Defendant moves to exclude testimony and portions of documents discussing and referencing

17  broker-ordered appraisals.  Defendant argues that this evidence is completely irrelevant to the claims

18  here because the Palm Terrace loans did not involve broker-ordered appraisals.  Plaintiff argues that

19  this evidence is relevant and admissible because it displays a "general lack of independence of the

20  appraisal ordering function."  (Doc. #187).

21        The court finds that any testimony and portions[1] of documents discussing broker-ordered

22  appraisals is irrelevant to the claims here.  FED. R. EVID. 401.  The Palm Terrace loans did not

23  include broker-ordered appraisals, and any "general lack of independence" is not sufficiently

24  _____

25       [1] Defendant's motion is specifically limited to "portions" of documents discussing broker-

26  ordered appraisals.  (Doc. #182).  Accordingly, defendant does not seek to eliminate otherwise
relevant and admissible evidence simply because it is contained in a document referencing broker-

27  ordered appraisals.  (*See also* Doc. #192 n.12).  The proper balance between the admissible and
inadmissible appraisal-related evidence can be accomplished by redacting the documents, where

28  necessary.

**James C. Mahan**
**U.S. District Judge**

1  connected to the claims at issue to be relevant.  Additionally, even if this evidence were relevant

2  under Rule 401, the court finds that it is inadmissible pursuant to Rule 403 because its probative

3  value is substantially outweighed by the confusion of issues and likelihood of prejudice.

4  **G.      Project 30 and shortening loan processing times**

5      Defendant seeks to limit evidence concerning "Project 30" and other efforts to shorten loan

6  processing times.  Defendant argues that Project 30 is irrelevant to the claims here because it was

7  rolled out more than one year after the Palm Terrace loans closed.  Therefore, it allegedly had no

8  influence over the claims at issue.  Plaintiff opposes this motion, asserting that the efforts to shorten

9  loan processing times is highly relevant evidence that defendant failed to underwrite the Palm

10  Terrace loans in accordance with customary industry standards.

11      Pursuant to Federal Rule of Evidence 403, the court excludes any evidence referencing

12  Project 30 because its probative value, if any, is outweighed by the confusion of issues and

13  likelihood of prejudice.  Project 30 was not instituted until after the Palm Terrace loans closed, so

14  this evidence is irrelevant to the claims at bar.  FED. R. EVID. 401.

15      However, the court will admit evidence that demonstrates shortened loan processing times

16  had an impact specifically on the Palm Terrace loans.  Any such evidence would be relevant, and its

17  probative value would not be substantially outweighed by confusion of the issues or prejudice to

18  defendant.

19  **H.      Dysfunctional relationship between departments**

20      Defendant's next motion *in limine* attempts to limit any evidence of an alleged

21  "dysfunctional" or "strained" relationship between the underwriting and origination departments.

22  Defendant alleges that plaintiff will suggest that the strained relationship between the departments

23  led to errors in underwriting loans.  Plaintiff responds that the conflicting operational goals and

24  incentive structure of these two departments are probative of systemic flaws within the program that

25  led to substandard underwriting decisions.  Thus, the poor relationship between the sales and

26  underwriting departments "is strong evidence that the underwriting of the [l]oans did not meet

27  customary industry standards."  (Doc. #187).

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1   The court denies defendant's motion without prejudice because this issue is not sufficiently
2   presented to the court in this motion *in limine*.  The court is skeptical that a strained relationship
3   between departments is "strong evidence" of a failure to meet customary industry standards.
4   However, the court is not prepared to find, based on this motion *in limine*, that this evidence is either
5   irrelevant pursuant to Rule 401 or that its relevance is substantially outweighed by a danger of
6   confusion of the issues or prejudice pursuant to Rule 403.  Defendant may renew this challenge at
7   trial, when the court has a better understanding of the relevant issues.

8   **I.     Top ten brokers**

9   Defendant moves to limit any evidence and testimony relating to "top ten" brokers.  Plaintiff
10  may argue that defendant had a policy of reviewing loans introduced by brokers with whom
11  defendant did a lot of business more leniently than other loans.  Allegedly, this leniency policy will
12  be used to indicate that defendant made loans that fell below the customary industry standards.
13  Defendant moves to limit this evidence, arguing that any policy of leniency towards certain favored
14  brokers is not relevant to the more specific issue of whether defendant breached representations and
15  warranties on these specific loans.

16  Pursuant to Rule 401, evidence is relevant if "it is has any tendency to make a fact more or
17  less probable than it would be without the evidence."  Here, a policy of leniency towards top ten
18  brokers would tend to make plaintiff's allegations of a breach of customary industry standards more
19  probable.  Thus, the evidence is relevant and admissible pursuant to Rules 401 and 402.

20  **J.     National field representative reports and loans not at issue**

21  Defendant's next motion *in limine* seeks to prohibit any documents and testimony about
22  alleged complaints by loan brokers and others about property inspections performed by national field
23  representatives.  Defendant argues that (1) there is no deposition testimony that there were problems
24  with the national field representative reports for the Palm Terrace properties, and (2) there is no
25  allegation that the quality of the reports is relevant to the breach of representations and warranties
26  claims at issue here.

27  In response, plaintiff asserts that an expert has made allegations that the 2005 inspection

28

**James C. Mahan**
**U.S. District Judge**

1  report was defective.  Further, the errors in the report are directly attributable to the general
2  sloppiness of the inspections, which is evidence that the loans did not meet customary industry
3  standards.

4       The court finds that alleged deficiencies in the national field reports on the Palm Terrace
5  properties are relevant and admissible pursuant to Rules 401 and 402.

6  **K.**    **Defendant's underwriting and appraisal practices at times other than when the Palm**
7         **Terrace loans were written**

8       Defendant moves to prohibit evidence of underwriting and appraisal guidelines that existed
9  outside of the time frame in which the Palm Terrace loans were ordered.  Defendant offers multiple
10  grounds for limiting this evidence: (1) it is not relevant pursuant to Rule 401; (2) it is inadmissible
11  pursuant to Rule 403; and (3) it is inadmissible pursuant to Rule 407 as evidence of a subsequent
12  remedial measure.

13       In response, plaintiff concedes that underwriting guidelines implemented after the Palm
14  Terrace loans were ordered are not relevant and should be excluded.  However, plaintiff argues that
15  evidence of defendant's later appraisal ordering procedures is relevant, admissible, and not barred
16  by Rule 407.  According to plaintiff, changes in defendant's appraisal ordering procedures is highly
17  relevant to the claim that the Palm Terrace loan appraisals were not FIRREA compliant.

18       The court grants defendant's motion to the extent that subsequently implemented
19  underwriting guidelines are not relevant and, thus, inadmissible.  FED. R. EVID. 401.  The court
20  further finds that evidence of underwriting and appraisal ordering guidelines in existence at times
21  other than when the Palm Terrace loans were written is not relevant to the ultimate issue here,
22  whether defendant breached warranties and representations on the Palm Terrace loans.  Pursuant to
23  Rule 401, this evidence is not admissible.

24  **L.**    **Bank of America's guidelines and testimony about its conduit and/or business banking**
25  **program**

26       Defendant's next motion *in limine* seeks to limit evidence that relates to Bank of America's
27  large loan conduit program and/or its business banking program.  Defendant asserts that these

28

James C. Mahan
U.S. District Judge

- 7 -

programs are allegedly significantly different from LaSalle's program, and any probative value that these programs may have would be substantially outweighed by the danger of confusing the issues and prejudice to the defendant.

Plaintiff agrees that Bank of America's underwriting guidelines may be excluded as a general matter.  However, plaintiff asserts that evidence of Bank of America's business banking program should be admissible to "provide a relevant metric for whether LaSalle's underwriting guidelines . . . met customary industry standards."  (Doc. #187).

The court finds that evidence of Bank of America's business banking program is relevant and admissible. FED. R. EVID. 401, 402.  Defendant is free to distinguish these programs before the jury. The probative value of this evidence is not substantially outweighed by any danger of confusion of issues or prejudice.  FED. R. EVID. 403.

**M.    Performance reviews of employees**

Defendant moves to exclude all performance reviews of former LaSalle employees, arguing that (1) this evidence is inadmissible pursuant to Rule 402 because it is not probative of whether defendant breached any representations and warranties in connection with the Palm Terrace loans, and (2) this evidence would prejudice defendant because defendant did not have an opportunity to cross-examine the author or subjects.

The court finds that this evidence is relevant and admissible during the time period for the Palm Terrace loans.

**N.    Legal conclusions or opinions**

Defendant's next motion *in limine* seeks to redact portions of documents and testimony that express legal conclusions or opinions.  Defendant wants to exclude the portions of documents and testimony by former LaSalle employees that allegedly offer legal opinions about whether LaSalle violated FIRREA standards.  Defendant argues that well-established Ninth Circuit law holds that neither lay witnesses nor experts are permitted to offer legal opinions. *See, e.g.*, *Nationwide Transp. Fin. v. Cass Info Sys.*, 523 F.3d 1051, 1058-60 (9th Cir. 2008).  Defendant further argues that excluding this evidence would be consistent with this court's February 9, 2011, *Daubert* order in this

James C. Mahan
U.S. District Judge

- 8 -

1  case.

2       In response, plaintiff argues that this evidence should be admissible pursuant to Federal Rule

3  of Evidence 801(d)(2), as an admission by party-opponent.  Plaintiff notes that all of the potentially

4  objectionable evidence was produced by defendant's former employees.

5       Pursuant to Rule 801(d)(2), a statement is not hearsay if it is offered against a party and is

6  the party's own statement or a statement by the party's agent.  "Admissions in the form of an opinion

7  are competent, even if the opinion is a conclusion of law."  GRAHAM, 30B FEDERAL PRACTICE &

8  PROCEDURE § 7015.

9       The court finds that this evidence is admissible because it is proffered to prove that the MFG

10  Program's appraisal process was not sufficiently independent.  To the extent the proffered evidence

11  constitutes admissions by a party-opponent, this evidence is relevant and admissible pursuant to

12  Rules 401 and 801(d)(2).

13  **O.    Tom Watson's draft reports**

14       Defendant moves to exclude all draft reports prepared by Tom Watson.  In 2006, LaSalle

15  hired Tom Watson as an independent consultant to provide opinions and advice on LaSalle's various

16  lending programs.  As part of his position, Mr. Watson produced a final report and several draft

17  reports.  Plaintiff alleges that the draft reports were reviewed and edited by LaSalle management.

18       Defendant argues that the draft reports are not admissible because: (1) they are irrelevant, and

19  (2) draft reports do not qualify under the business records exception to the hearsay rule.  In contrast,

20  plaintiff asserts that the draft reports are relevant and admissible in this case because they

21  demonstrate that the final report was "substantially different or diluted from initial findings . . . ."

22  (Doc. #187).

23       The court finds that the draft reports are inadmissible hearsay.  *Lloyd v. Professional Realty*

24  *Servs., Inc.*, 734 F.2d 1428, 1433 (11th Cir. 1984) (finding that draft minutes did not qualify as

25  business records because they were prepared "quite different[ly] from the final copy" and "were not

26  trustworthy").  Plaintiff's assertion that the revisions themselves are what make the draft reports

27  relevant is not availing because, as defendant points out, "the differences between final and draft

28

James C. Mahan
U.S. District Judge

- 9 -

1    documents are precisely why draft documents are not business records."  (Doc. #192, n.22).

2         Finally, the court declines to make any ruling on the admissibility of other evidence

3    pertaining to Tom Watson's FIRREA compliance consulting assignment as a lay witness.  Plaintiff

4    expends several pages in its opposition arguing that Mr. Watson's reports and correspondence are

5    admissible as factual observations.  Plaintiff's arguments on this topic are outside of the scope of

6    defendant's motion *in limine*.  Defendant's motion seeks only to limit initial drafts of Mr. Watson's

7    final report.  The admissibility of other reports and correspondence by Mr. Watson is not currently

8    before the court.  Therefore, the court declines to make any ruling on this issue.

9    **P.    Defense counsel's representation of former and current LaSalle employees**

10        Defendant seeks to prevent plaintiff from referencing defense counsel's representation of

11   potential witnesses in this case, including: (1) "the fact of or circumstances surrounding the initiation

12   of the representation," (2) whether witnesses are paying for their representation, and (3) defense

13   counsel's preparation of the witnesses for their depositions. (Doc. #182).  Defendant asserts that this

14   evidence is clearly irrelevant to the claims in this action.

15        In response, plaintiff argues that evidence of defense counsel's representation of witnesses

16   is admissible at trial to show potential bias on the part of the witness.  According to plaintiff,

17   defendant's "comprehensive deposition preparation sessions and free representation of each witness

18   are extremely pertinent on the issue of bias and witness credibility."  (Doc. #187).

19        The credibility and potential bias of a witness are relevant.  *See United States v. Abel*, 469

20   U.S. 45, 51 (1984); *United States v. Rodriguez*, 439 F.2d 782, 783 (9th Cir. 1971).  Accordingly, this

21   evidence is admissible for impeachment purposes.

22   **Q.    Borrower lawsuit information**

23        Defendant next moves to limit all information and evidence relating to a lawsuit brought by

24   some of the Palm Terrace Loan borrowers against the property sellers.  Alternatively, defendant

25   moves to limit any reference to this lawsuit to the fact that a lawsuit was filed and exclude the

26   allegations raised in the lawsuit.  Defendant asserts that this evidence is not relevant to whether a

27   breach of representation and warranty 13 occurred because paragraph 6(h) of the mortgage

28

James C. Mahan
U.S. District Judge

documents does not apply to the current dispute. Further, even assuming that the evidence is relevant, it should be excluded because: (1) it contains inadmissible hearsay pursuant to Rule 801(c), and (2) the probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues pursuant to Rule 403.

During the summary judgment proceedings, the court declined to find, as a matter of law, that paragraph 6(h) is inapplicable to the case at bar. Accordingly, the court again declines to exclude this evidence as irrelevant in this motion *in limine*.

**R.     LaSalle's contact with borrowers after the loans were closed**

Defendant moves to exclude evidence of contact between defendant and Albert Lee, one of the borrowers. After the loans had closed, Mr. Lee contacted defendant with allegations that USA Commercial, the broker, had misrepresented occupancy rates, rents, and deferred maintenance issues. Defendant states that these communications occurred after the loans had closed. Thus, Mr. Lee's allegations are irrelevant to whether defendant's underwriting and closing actions constituted a breach of representation and warranty 23. Further, defendant argues that this evidence should be excluded pursuant to Rule 403 because its probative value is substantially outweighed by the danger of prejudice and confusion of the issues.

Plaintiff responds that representation and warranty 23 provides that both the origination and servicing of the loans met customary industry standards. Mr. Lee's allegations were communicated to defendant after the closing date but before the loans were securitized. Plaintiff further asserts that Mr. Lee's testimony is highly relevant evidence that defendant's underwriting actions did not meet customary industry standards.

The court finds this evidence relevant and admissible pursuant to Rules 401 and 402. In the court's order on plaintiff's consolidated motion *in limine*, the court found that a breach of representation and warranty 23 does not require defendant to have actual knowledge at the time of the breach. (Doc. #209). Therefore, it is immaterial whether defendant was aware of Mr. Lee's allegations before or after the closing date; defendant may be liable under representation and warranty 23 regardless of when it became aware of Mr. Lee's allegations. Mr. Lee's allegations are

1    relevant to whether defendant's actions fell below customary industry standards.

2          The court further finds that the probative value of this evidence is not substantially

3    outweighed by a danger of prejudice or confusion of the issues. *See* FED. R. EVID. 403.

4    **S.      Characterizing multiple sales of Palm Terrace apartments as a "flip" transaction**

5          Defendant acknowledges that Palm Terrace, LLC purchased the Palm Terrace apartments for

6    $7,000,000 in November 2004, and then sold the Palm Terrace apartments in less than a year in

7    separate transactions totaling $8,548,000. However, defendant objects to any evidence or testimony

8    referencing these sales as a "flip" transaction. Defendant argues that "flip" is a pejorative term that

9    can be understood to refer to improper or even fraudulent activity and, thus, should be excluded

10   pursuant to Rule 403.

11         The court is not inclined to agree with defendant that the term "flip" is unfairly prejudicial.

12   The term "flip" encompasses many shades of meaning, and the court is not prepared to find that its

13   use is *per se* prejudicial.

14   **T.     Crime statistics**

15         Finally, defendant moves to exclude any evidence of crime or crime statistics at the Palm

16   Terrace apartments or the surrounding neighborhood. Defendant argues that appraisers are not

17   required to refer to crime statistics during their appraisal, so this evidence is irrelevant to any alleged

18   breach of representation or warranty. Thus, the evidence could only be used to place the Palm

19   Terrace apartments in a harsh light and would be unfairly prejudicial.

20         Plaintiff responds that in underwriting the loans, LaSalle overlooked basic information about

21   the Palm Terrace property and surrounding area. The Palm Terrace borrowers were told that Palm

22   Terrace was closed for renovations. Instead, the property had previously been closed by the Las

23   Vegas Metropolitan Police Department due to criminal activity. Plaintiff argues that the failure to

24   consider crime and crime statistics in an appraisal under these circumstances "is nothing short of

25   misleading." (Doc. #187). Further, plaintiff asserts that the failure to consider crime statistics is

26   probative evidence of a breach of warranty and representation 23 because it demonstrates: (1) that

27   the lender did not understand the market; (2) that the lender used a deficient site inspection firm; and

28

**James C. Mahan**
**U.S. District Judge**

1   (3) that the lender failed to reconcile conflicting pieces of information such as occupancy rates.

2   Plaintiff seeks to use evidence of crime and crime statistics "to demonstrate the depth and breadth

3   of [LaSalle's] breach."  (Doc. #187).

4           The court finds that this information is both relevant and admissible pursuant to Rules 401

5   and 402.  Further, the probative value of this evidence is not substantially outweighed by a danger

6   of prejudice.  Therefore, plaintiff may introduce evidence of crime and crime statistics.

7           Accordingly,

8           IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant LaSalle Bank

9   National Association's motion *in limine* (doc. #182) be, and the same hereby is, GRANTED in part

10  and DENIED in part.

11         DATED December 15, 2011.

12

13                           _____

14                    **UNITED STATES DISTRICT JUDGE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28